**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**
**(SOUTHERN DIVISION)**

| | |
|---|---|
| TOMASA ORELLANA<br>5404 Clifton Avenue<br>Gwynn Oak, MD 21207<br><br>*Plaintiff*,<br>  v.<br><br>ABSOLUTE SERVICE INDUSTRIES, LLC<br>300 East Lombard Street<br>Suite 840<br>Baltimore, MD 21202<br><br>SERVE: Gregory R. Tucker<br>         Resident Agent<br>         11218 Midvale Road<br>         Kensington, MD 20895<br><br>    And<br><br>GREGORY R. TUCKER<br>11215 Valley View Avenue<br>Kensington, MD 20895<br><br>    And<br><br>EDWIN LOPEZ<br>11218 Midvale Road<br>Kensington, MD 20895<br><br>*Defendants*. | Civil Action No.:   19-80 |

**COMPLAINT**

Plaintiff, Tomasa Orellana ("Plaintiff Orellena") brings this action against Defendants, Absolute Service Industries, LLC ("ASI LLC"), Gregory R. Tucker ("Tucker"), and Edwin Lopez ("Lopez"), and alleges as follows:

## INTRODUCTION

1. This action arises from Defendants' violations of Plaintiff's rights under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; the Maryland Wage and Hour Law ("MWHL"), Labor & Empl. Art. § 3-415 *et seq*; and the Maryland Wage Payment and Collection Law ("MWPCL"), Labor & Empl. Art., § 3-501, *et seq*. Plaintiff brings this action to recover unpaid, illegally withheld overtime compensation, liquidated damages, attorneys' fees and litigation costs for Defendants' willful failure to pay her in accordance with the FLSA, the MWHL and the MWPCL.

## JURISDICTION

2. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claim involves a federal question and this Court has pendant jurisdiction over the Plaintiff's state law claims under 28 U.S.C. § 1367.

3. This Court has *in personam* jurisdiction over Defendants because they conduct business in the State of Maryland and because all of the events giving rise to these claims occurred in the State of Maryland.

## THE DEFENDANTS

4. ASI LLC is a limited liability company organized under the laws of the State of Maryland with its principal place of business in Baltimore City, Maryland. ASI LLC provides cleaning and janitorial services to commercial clients and has between 30-50 employees. ASI LLC is owned by Tucker who also owns another commercial cleaning company based out of Montgomery County, Maryland: Sentral Services, LLC "Sentral LLC." Tucker is also the managing member of Sentral LLC. Both ASI LLC and Sentral LLC are operated out of Tucker's residence at 11218 Midvale Road, Kensington, Maryland 20815. ASI LLC and Sentral LLC also share many of

the same managers and supervisors. For example, Plaintiff's second-line supervisor Lopez and her first-line supervisor Francisco Lisama are employees by both Sentral Services LLC and/or ASI LLC

5. ASI LLC and Sentral LLC collectively and independently meet the definition of an "Enterprise Engaged in Commerce" under 29 U.S.C. § 203 (r)(1) and (s)(1), as they are: (a) under common ownership and control; and (b) operated for a common business purpose and either alone or collectively, have (1) employees engaged in commerce or the production of goods for commerce or (2) employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce and a gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated).

6. Tucker is an officer, owner and managing member of ASI LLC. He is an "employer" of Plaintiff within the meaning of the FLSA, the MWPCL and the MWHL because: (1) he is a member, partner or owner of ASI LLC; (2) he exercises operational control over ASI LLC; (3) he controlled the terms and conditions of Plaintiff's employment, including compensation and pay practices; and 4) he had the ability to hire and fire the Plaintiff. Specifically, Tucker was responsible for assigning Plaintiff to work as a porter and janitor exclusively at the headquarters of Ciena Corporation located at 7305 Ridge Road, Hanover, Maryland 21076. Tucker set Plaintiff's rate of pay, and approved incremental pay increases that Plaintiff received. He communicated with staff at Ciena about Plaintiff and how she performed her job duties and he supervised Plaintiff directly because Plaintiff was required to send Tucker reports at the end of each workday detailing the specific tasks she completed that day.

7. Lopez is the Vice President of Operations at ASI LLC. He is an "employer" of Plaintiff within the meaning of the FLSA, the MWPCL and the MWHL because: 1) he exercised

operational control over ASI LLC; 2) he controlled the terms and conditions of Plaintiff's employment, including approving Plaintiff's requests for vacation and leave, giving Plaintiff instructions about the performance of her duties on a regular basis, assigning Plaintiff work, setting her schedule, setting Plaintiff's rate of pay, and approving pay raises; and 3) Lopez also had the ability to hire and fire the Plaintiff and did in fact hire Plaintiff in 2012.

## THE PLAINTIFF

8. Plaintiff is an adult resident of Baltimore County, Maryland and, during the three-year period and two-week period prior to the filing date of this Complaint, was employed by Defendants as a janitor until she was laid off on or about August 31, 2018.

## STATEMENT OF FACTS

9. On or about July 19, 2012, Plaintiff was hired by Defendant Lopez and Tucker to the position of janitor with ASI, LLC. Plaintiff was told by Lopez she would be paid at an hourly rate for all of her hours worked.

10. In or around December 2012, Plaintiff was given the title of "supervisor" by Lopez and Tucker and assigned to work exclusively as a janitor at an office complex located in Hanover, Maryland. The complex is comprised of three separate office buildings, two of which serve as the headquarters of the Ciena corporation. Plaintiff's direct supervisor was initially "Luis" and then Francisco Lisama. Both of whom held the position of "account manager" and were in charge of the job site where Plaintiff worked. Luis and Francisco were responsible for jobs for both Sentral LLC and ASI LLC and Plaintiff would often observe Luis wearing the uniform of both companies.

11. At the time Plaintiff was given the title of "supervisor," Tucker and Lopez made the decision to bifurcate Plaintiff's work schedule into a day shift and an evening shift and assigned Plaintiff to work both shifts Monday through Friday. Plaintiff was initially paid $12.00 per hour for

the day shift then received a raise to $12.50 per hour and she was initially paid $14.00 per hour then given a raise to $14.50 per hour for the time she worked on the night shift. Other than the change in the hourly rate for the night shift work, the method by which Defendants compensated Plaintiff did not change – she was always an hourly employee. Plaintiff worked the day shift by herself and the night shift with between 8 to 10 other ASI LLC employees.

12. Plaintiff generally worked the day shift from 7:00 a.m. to 3:30 p.m. with a 30-minute lunch break (on average at least 40 hours each week – but sometime more). Plaintiff reported directly to the job site in the morning and would perform janitorial work for the entire day shift including the following pre-assigned tasks: picking up refuse in the parking lot, sweeping, changing toilet paper in the restrooms, cleaning the restrooms, taking out the garbage, emptying recycling bins and responding to general requests for cleaning services from the building's tenants. Plaintiff did not oversee the work of any other ASI LLC employees during the day shift and was the only ASI LLC employee who was present on the job site during the day shift unless the account manager assigned to that particular job site stopped by to pick up Plaintiff's timesheets or drop off cleaning supplies for her.

13. Plaintiff worked the night shift from 5:00 p.m. to 10:00 p.m. with no meal break (25 hours each week). During the night shift, Plaintiff directed the work of between 8 to 10 other ASI LLC employees in order to facilitate the completion of a pre-determined set of cleaning tasks. Because Plaintiff was familiar with the requirements of this particular job site, Plaintiff would assign jobs to the other employees and would inspect the work to make sure it was completed. If one of the other employees did not show up, Plaintiff would fill in for them and perform the cleaning work herself.

14. At the end of the night shift, Plaintiff would send a report by email to Tucker and Lopez indicating that all of the necessary cleaning tasks had been performed. If she failed to send the report on time Tucker or Lopez would call the Plaintiff and ask why the report had not been sent.

15. Plaintiff was always required to keep track of all of the hours she worked by writing down her start time and stop time on a timesheet provided to her by the employer which she would turn in to her direct supervisor (Luis and then Francisco Lisama) twice each month. Plaintiff was required to use a separate timesheet for the day shift and night shift. Beginning in late 2016, Plaintiff began to use an application on her mobile telephone to record when she started and stopped working. On average, Plaintiff worked 65 hours each week.

16. At all times relevant to the Complaint, Defendants paid Plaintiff strictly on an hourly basis for all of her work (day and night shift). Plaintiff was only paid for the hours she worked and paid only at her straight time rates of pay. If Plaintiff worked less than a full shift, on either the day or night shift, she was only paid for the hours she worked and was not paid for a full shift. The following are just two examples of when Defendants docked Plaintiff's pay for less than full-day absence:

    i. Pay period 1/16/2016 to 1/31/2016 Plaintiff was docked one hour of pay on the night shift.

    ii. Pay period 2/1/2016 to 2/15/2016 Plaintiff was docked one hour of pay on the night shift.

    iii. Pay period 7/1/2016 to 7/15/2016 Plaintiff was docked 3 hours of pay on the day shift.

      ii.      Pay period 08/01/2016 to 08/15/2016 Plaintiff was docked 30 minutes of pay on the night shift.

      ii.      Pay period 04/16/2017 to 04/30/3017 Plaintiff was docked 3 hours for one of her day shifts and 2 hours for one of her night shifts.

17.     Defendants did not pay Plaintiff overtime when her overtime hours were on the day shift either. For example:

      i.      Pay period 07/16/2016 to 07/31/2016 Plaintiff had 53 hours of overtime, 3 hours of which were on the day shift but Plaintiff was paid her straight-time rate for all hours worked this pay period.

18.     Plaintiff's pay stubs confirm she was paid strictly on an hourly basis because they indicate that her gross pay each pay period was calculated by multiplying the hours and minutes she worked by her hourly rate of pay for a specific shift.

19.     From December 25, 2015 to August 31, 2018, Plaintiff routinely worked approximately 65 hours per week, which meant that she worked approximately 25 hours per work of overtime.  During that time Plaintiff was not paid one-and-one half times her regular hourly rate for each hour over 40 that she worked; she was paid at straight time wages for this time.  Plaintiff was non-exempt for this entire period because she was never paid on a salary basis.  In addition, supervision was not a Plaintiff's primary duty at any time since December 25, 2015.

## COUNT I
## VIOLATIONS OF THE FLSA

20.     Plaintiff repeats and incorporates by reference all allegations of fact set forth above.

21.     Plaintiff was engaged in commerce and/or handled goods that have been moved in commerce, and alternatively, Defendants constitute an enterprise engaged in commerce.

22. At all times relevant to this Complaint, Plaintiff was an "employee" of the Defendants within the meaning of the FLSA.

23. At all times relevant to this Complaint, Defendants were Plaintiff's "employers" within the meaning of the FLSA and the Economic Reality Test.

24. Defendants violated the FLSA by knowingly failing to pay Plaintiff at one and one-half times her regular hourly rate for each hour over 40 that she worked during the workweek.

25. Defendants' actions were willful as defined by the FLSA and were not undertaken in good faith.

26. Defendants are liable to Plaintiff under 29 U.S.C. § 216(b) of the FLSA, for her unpaid, and illegally withheld overtime compensation, plus an additional equal amount as liquidated damages, court costs, reasonable attorneys' fees and expenses, and any other relief deemed appropriate by the Court.

27. Plaintiff estimates she is owed approximately $22,400.00 in unpaid overtime wages. Defendants are in possession of Plaintiff's time and payroll records for the three-year and two-week period prior to the filing of this Complaint and once Plaintiff receives those records, she will provide a more precise calculation of her damages.

## COUNT II
## VIOLATIONS OF THE MWHL AND THE MWPCL

28. Plaintiff repeats and incorporates by reference the allegations set for in Paragraphs 1-24 above.

29. At all times relevant to this Complaint, Plaintiff was an "employee" of the Defendants within the meaning of the MWHL and the MWPCL.

30. At all times relevant to this Complaint, Defendants were Plaintiff's "employers" within the meaning of the MWHL and the MWPCL.

31. Defendants failed to pay Plaintiff at one and one-half times her regular hourly rate for each hour over 40 that she worked in a work week.

32. Defendants knowingly, willfully and intentionally violated Plaintiff's rights under the MWHL and the MWPCL, and the Defendants' unlawful failure or refusal to pay the required wages was not the result of a bona fide dispute within the meaning of the MWPCL.

33. Defendants are liable to Plaintiff pursuant to the MWHL and the MWPCL for her unpaid and illegally withheld overtimes wages earned during the three-year and two-week period preceding the filing date of this Complaint, double or treble damages as liquidated damages, attorney's fees and litigation costs and expenses, and any other relief deemed appropriate by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant her the following relief:

a) enter a judgment against Defendants, jointly and severally, and in favor of the Plaintiff in the amount of Plaintiff's unpaid and illegally withheld overtime wages, plus an equivalent amount as liquidated damages pursuant to 29 U.S.C. § 216(b);

b) enter a judgment against Defendants, jointly and severally, and in favor of Plaintiff based on Defendants' violations of the MWHL and the MWPCL, in the amount of: (1) Plaintiff's respective unpaid and illegally withheld overtime wages; and (2) either (a) an equal sum as liquidated damages and/or (b) a sum equal to double liquidated damages under the MWPCL;

c) award Plaintiff her costs and reasonable attorneys' fees incurred in this action, as provided in 29 U.S.C. § 216 (b) and Md. Code Ann., Labor & Empl. § 3-507.2; and

d) permanently enjoin Defendants from committing further violations of the FLSA the MWHL and the MWPCL.

Respectfully submitted,

_____/s/_____
Omar Vincent Melehy
Maryland Bar No.: 05712
MELEHY & ASSOCIATES LLC
8403 Colesville Road, Suite 610
Silver Spring, MD 20910
Tel: (301) 587-6364
Fax: (301) 587-6308
Email: ovmelehy@melehylaw.com
*Attorney for Plaintiffs*