```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND
```

                                    :
TOMASA ORELLANA
                                    :

    v.                              :    Civil Action No. DKC 19-0080

                                    :

ABSOLUTE SERVICE INDUSTRIES,
LLC, et al.                         :

**MEMORANDUM OPINION**

The parties in this employment case filed a joint motion for approval of settlement agreement on April 23, 2019. (ECF No. 24). The agreement provides that, upon court approval, Defendants Absolute Service Industries, LLC ("ASI"), Gregory, R. Tucker and Edwin Lopez (collectively, "Defendants") will pay Plaintiff Tomasa Orellana ("Plaintiff") $25,500 in unpaid wages and $25,500 in liquidated damages. (ECF No. 24-1, at 3). Defendants will also pay $44,000 for attorneys' fees and costs. (*Id.*). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. Because the proposed settlement agreement represents a fair and reasonable resolution of a *bona fide* FLSA dispute, the settlement will be approved.

**I. Background**

Plaintiff filed a complaint on January 9, 2019 alleging two counts: (1) violations of the Fair Labor Standards Act ("FLSA") and (2) violations of the Maryland Wage and Hour Law ("MWHL") and

Maryland Wage Payment and Collection Law ("MWPCL"). (ECF No. 1, at 7-9). The parties filed a letter and initial status report on March 12, 2019, requesting a "120-day extension of all of the deadlines in the initial [s]cheduling [o]rder to allow the [p]arties to engage in settlement discussions[.]" (ECF Nos. 15; 14, at 1). On March 13, 2019, the case was referred to Magistrate Judge Beth P. Gesner for alternative dispute resolution. (ECF No. 16). Plaintiff filed an amended complaint on March 18, 2019. (ECF No. 22).

According to Plaintiff's amended complaint, Defendants Lopez and Tucker hired Plaintiff as a janitor for ASI, LLC on July 19, 2012. (*Id.*, at 4). In December, 2012, Plaintiff was promoted to supervisor "and assigned to work exclusively as a janitor at an office complex located in Hanover, Maryland, where she worked until her employment ended on August 31, 2018." (*Id.*). In her role as supervisor, Plaintiff worked two shifts per day every Monday through Friday. (*Id.*). Plaintiff's assigned hours for the "morning shift" were 7:00 a.m. to 3:30 p.m. and included a 30-minute lunch break. (*Id.*, at 5). Plaintiff's assigned hours for the "night shift" were 5:00 p.m. to 10:00 p.m. (ECF No. 22, at 5). Thus, Plaintiff's daily shifts totaled 13 hours per day. However, Plaintiff was expected to complete a set number of pre-

assigned tasks during each shift, and often arrived before her shift began and continued working after her shift ended to complete the assigned tasks. (*Id.*). Plaintiff recorded her hours on a timesheet and submitted the timesheets to her direct supervisor. (*Id.*, at 6). By comparing her timesheets with her payroll records, Plaintiff discovered that she was consistently deprived of pay for some of the hours she worked. (*Id.*, at 7). Plaintiff asserts that "[i]n many instances, Defendants avoided paying for hours worked by Plaintiff by rounding down the time to the nearest hour and in other instances . . . failed to pay Plaintiff for hours or even days worked." (*Id.*). The purported violations occurred "in nearly every period for which Defendants provided records" and included both regular and overtime hours. (ECF No. 22, at 7-8). As a result, Plaintiff seeks entry of judgment "against Defendants, jointly and severally, and in favor of the Plaintiff in the amount of Plaintiff's unpaid and illegally withheld overtime wages, plus an equivalent amount as liquidated damages pursuant to 29 U.S.C. § 216(b)[.]" (ECF No. 22, at 11).

## II. Analysis

Because Congress enacted the FLSA to protect workers from the poor wages and long hours that can result from significant inequalities in bargaining power between employers and employees,

the provisions of the FLSA are mandatory and, except in two narrow circumstances, are generally not subject to bargaining, waiver, or modification by contract or settlement. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706-07 (1945). Under the first exception, the Secretary of Labor may supervise the payment of back wages to employees, who waive their rights to seek liquidated damages upon accepting the full amount of the wages owed. *See* 29 U.S.C. § 216(c). Under the second exception, a district court can approve a settlement between an employer and an employee who has brought a private action for unpaid wages pursuant to Section 216(b), provided that the settlement reflects a "reasonable compromise of disputed issues" rather than "a mere waiver of statutory rights brought about by an employer's overreaching." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982); *see also Duprey v. Scotts Co.*, 30 F.Supp.3d 404, 407 (D.Md. 2014).

Although the United States Court of Appeals for the Fourth Circuit has not directly addressed the factors to be considered in deciding whether to approve such settlements, district courts in this circuit typically employ the considerations set forth by the United States Court of Appeals for the Eleventh Circuit in *Lynn's Food Stores*. *See, e.g.*, *Duprey*, 30 F.Supp.3d at 407-08; *Lopez v. NTI, LLC*, 748 F.Supp.2d 471, 478 (D.Md. 2010). An FLSA settlement

generally should be approved if it reflects "a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Lynn's Food Stores*, 679 F.2d at 1355. Thus, as a first step, the *bona fides* of the parties' dispute must be examined to determine if there are FLSA issues that are "actually in dispute." *Id.* at 1354. Then, as a second step, the terms of the proposed settlement agreement must be assessed for fairness and reasonableness, which requires weighing a number of factors, including:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of counsel . . .; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.

*Hackett v. ADF Restaurant Invs.*, 259 F.Supp.3d 360, 365 (D.Md. 2016) (quoting *Saman v. LBDP, Inc.*, DKC-12-1083, 2013 WL 2949047, at *3 (D.Md. June 13, 2013); *see also Duprey*, 30 F.Supp.3d at 408, 409. Finally, where a proposed settlement of FLSA claims includes a provision regarding attorneys' fees, the reasonableness of the award must also "be independently assessed, regardless of whether there is any suggestion that a 'conflict of interest taints the amount the wronged employee recovers under a settlement

agreement.'" *Lane v. Ko-Me, LLC*, No. DKC-10-2261, 2011 WL 3880427, at *3 (Aug. 31, 2011) (citation omitted).

    **A.** ***Bona Fide* Dispute**

"In deciding whether a bona fide dispute exists as to a defendant's liability under the FLSA, courts examine the pleadings in the case, along with the representations and recitals in the proposed settlement agreement." *Duprey*, 30 F.Supp.3d at 408. In the complaint, Plaintiff alleged that Defendants committed "rampant wage theft" by withholding compensation for regular and overtime hours "in nearly every pay period." (ECF No. 22, at 7-8). Plaintiff further asserts that Defendants failed to compensate her for "a one-week vacation during the pay period of February 16, 2016 to February 29, 2016." (*Id.*, at 9). Defendants' answers to Plaintiff's original complaint deny Plaintiff's allegations, indicating that the parties differ in their view of the amount of compensation Plaintiff was owed and received for her overtime work. (*See* ECF Nos. 10 & 11). Additionally, in the letter accompanying Defendants' March 12, 2019 joint status report, Defendants deny that Plaintiff worked 65 hours per week, Plaintiff was not paid on a salary basis, and Plaintiff's primary duty was not supervision. (ECF No. 15, at 1). Defendants' denials and the parties' overall disagreement indicates the presence of a *bonda fide* dispute.

**B. Fairness & Reasonableness**

Upon review of the parties' submissions and after considering the relevant factors, the agreement appears to be a fair and reasonable compromise of the parties' *bona fide* dispute. The parties "engaged in some informal discovery regarding the hours Plaintiff worked and the nature of her duties." (ECF No. 24, at 2). Plaintiff is represented by a lawyer with many years of experience and, due to Plaintiff's limited English-speaking abilities, she received additional services to ensure she understood all information throughout the settlement process. (*Id.*, at 4). Defendants are represented by experienced lawyers with employment expertise. (*Id.*). The parties participated in "extensive negotiations" and concluded "that the expense[] and likely duration of this litigation militated in favor of early settlement." (*Id.*, at 3). Thus, the parties have had sufficient opportunity to obtain additional evidence through informal discovery, evaluate their claims and defenses, and conclude that, based in part on desires to avoid a lengthy and costly litigation process, settlement is the most appropriate resolution. Moreover, there is no evidence that the agreement is the product of fraud or collusion.

The settlement amount, in light of Plaintiff's now stated potential recovery, also appears to be fair and reasonable. In her original complaint, Plaintiff stated that she is owed a total of $22,400 in unpaid overtime wages. (ECF No. 1, at 8). After reviewing relevant time records, Plaintiff concluded that she is owed an additional $3,100 in unpaid wages. (ECF No. 24, at 3). Through an "extensive negotiation[,]" process, Defendants agreed to pay Plaintiff $25,500 in unpaid wages and $25,500 in liquidated damages. (ECF No. 24-1, at 3). Thus, the total settlement amount is twice the amount of unpaid wages sought by Plaintiff and constitutes a fair and reasonable resolution of her disputed claims.

The agreement contains a general release of claims beyond those specified in the amended complaint. The agreement states, in relevant part:

> Orellana hereby releases and discharges Defendants forever from each and every right, claim, debt and cause of action whatsoever, known and unknown, foreseen and unforeseen, against Defendants, which Orellana has or may have upon or by reason of any matter, cause or thing whatsoever at any time, past, or present from the beginning of the world until the date of this Settlement Agreement, including but not limited to, any matter, thing or cause arising from or in any way related to the above-referenced circumstances.

(ECF No. 24-1, at 5-6). The agreement also contains a specific release of claims arising under the Age Discrimination in Employment Act ("ADEA"), stating that Plaintiff "irrevocably and unconditionally fully and forever waives, releases and discharges [ ] Defendants from any and all [c]laims, whether known or unknown, from the beginning of time to the date of . . . [the] [a]greement" arising under the ADEA. (*Id.*, at 7).

Some courts have held that overly broad release provisions can render an FLSA agreement unreasonable if the release includes claims unrelated to those asserted in the complaint. *See, e.g., Moreno v. Regions Bank*, 729 F.Supp.2d 1346, 1352, (M.D.Fla. 2010) (concluding that "a pervasive release in an FLSA settlement confers an uncompensated, unevaluated, and unfair benefit on the employer" that fails "judicial scrutiny"); *McKeen–Chaplin v. Franklin Am. Mortg. Co.*, No. 10–5243 SBA, 2012 WL 6629608, at *3 (N.D.Cal. Dec. 19, 2012) (rejecting FLSA settlement agreement where the release "provision does not track the breadth of the allegations in this action and releases unrelated claims"). Although a general release can render an FLSA settlement agreement unreasonable, the court "is not required to evaluate the reasonableness of the settlement as it relates to non-wage-dispute claims if the employee is compensated reasonably for the release executed." *Villarroel v.*

*Sri Siva Vishnu Temple*, No. GJH-I-T-02617, 2014 WL 7460967, at *3 (D.Md. Dec.31, 2014); *see also Duprey*, 30 F.Supp.3d at 410 (wherein the court approved a settlement agreement that included a general release of claims on the basis that the employee was reasonably compensated for the release). Because the $51,000 provided to Plaintiff in the agreement appears to be a fair and reasonable resolution of Plaintiff's claims, the amount also reflects fair compensation for the release provisions executed.

**C. Attorneys' Fees and Costs**

Finally, the provisions regarding attorneys' fees and costs must also be assessed for reasonableness.

> In assessing the reasonableness of the fee, courts typically refer to the principles of the traditional lodestar method as a guide, even when the attorneys' fees are based on a contingency fee. An attorneys fee award negotiated pursuant to a contingent-fee arrangement can be approved if a court finds that (1) the fees were negotiated separately from the damages, so that they do not infringe on the employee's statutory award, and (2) they are reasonable under the lodestar approach.

*Hackett,* 259 F.Supp.3d at 360 (internal citations omitted). The starting point in the lodestar calculation is multiplying the number of hours reasonably expended by a reasonable hourly rate. *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir.

2009). "An hourly rate is reasonable if it is 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Duprey*, 30 F.Supp.3d at 412 (quoting *Blum v. Stenson*, 465 U.S. 886, 890 n.11 (1984)). This court has established presumptively reasonable rates in Appendix B to its Local Rules.

Plaintiff's counsel state in the joint motion that "the hourly attorneys' fees incurred by Plaintiff were $44,890.00 with litigation costs of $1,008.46." (ECF No. 24, at 4). Plaintiff's counsel add that they "will forego any other claim for attorneys' fees and accept the $44,000.00 as full satisfaction of any claim for attorneys' fees and litigation costs." (*Id.*, at 5).

The attorneys' fees appear to be reasonable. Plaintiff's counsel do not indicate the years of experience they each possess or the number of hours they spent working on his case.[1] However,

---

[1] The join motion for approval of settlement states that Plaintiff's lead attorney, Suvita Melehy, has practiced since 1995. (ECF No. 24, at 3). Thus, the guidelines allow Ms. Melehy to bill at the rate of $300-475 per hour. From other cases in this court, the court can discern that Omar Melehy has also practiced for over twenty years and billed in 2016 at the rate of $475 per hour. *See Morataya v. Nancy's Kitchen of Silver Spring, Inc.*, No. GJH-13-01888, 2016 WL 6634856, at *3 (D.Md. Nov. 8, 2016). Plaintiff's third attorney, Andrew Balashov, has practiced for less than five years, allowing him to bill at a lower rate of $150-225 per hour. Attorney Profile of Andrew Balashov, https://1.

if each of Plaintiff's attorneys billed at the minimum compensation rate for their respective experience level in Appendix B, the settlement amount provides counsel with compensation for about 176 hours of work on Plaintiff's case.  Plaintiff's counsel conducted informal discovery and extensive settlement negotiations, thus it is conceivable that they dedicated 176 hours of their time to this case.  Even without information regarding the exact amount of time counsel spent working on the case, it is clear that the total attorneys' fees in the amount of $44,000 are reasonable and within the customary fee in Maryland for the legal work involved.

**III. Conclusion**

For the foregoing reasons, the joint motion for approval of settlement agreement will be granted.  A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge

---

next.westlaw.com/Browse/Home/Profiler (follow "Attorneys & Judges" hyperlink; then search "Andrew Balashov"; follow "Andrew Balashov" hyperlink).